## DEN, EX DEM. LOW, v. GOLDTRAP.

A, seized in fee, mortgaged his estate to B, in 1760, which mortgage was accompanied by a bond and warrant, but the mortgage was never recorded. In 1765, the mortgagor, still in possession, mortgages the same premises to C, without any accompanying bond; this was duly recorded. In 1772, B enters up judgment, levies on the land, which is purchased by D. *Held,*

that the act of 1786, requiring the recording of mortgages, makes those unrecorded void only as against purchasers, and does not affect subsequent mortgages. The acts of 1765 and 1786 do not affect mortgages given prior to the date of the first law. The acquiescence of the second mortgagee under a sale, for twenty years, takes from him all equity.

In ejectment for lands in Somerset. The following agreement, containing a case stated for the opinion of the court, was entered into between the parties:

[273] " It is agreed that a verdict be taken in this action for the plaintiff, at the court of Nisi Prius, to be holden at Bridgewater, for the county of Somerset, on the, &c., subject to the opinion of the court on the following case, viz.:

" On the first day of February, one thousand seven hundred and sixty, Daniel Hendricks was seized and possessed of the premises in question in fee simple.

" On the same first day of February, one thousand seven hundred and sixty, Daniel Hendricks mortgaged the said premises, together with other lands, to one John Watson, to secure the payment of a certain bond of the same date from him to the said Watson, conditioned for the payment of thirty-four pounds thirteen shillings, light money. This mortgage has never been recorded.

" On the 30th of September, 1765, Daniel Hendricks, still being in possession of the premises, mortgaged them to Cornelius Low, Jr., which mortgage was not accompanied with a bond, but was conditioned for the payment of twenty-seven pounds four shillings and two pence, light money, and was duly recorded.

" In April Term, 1772, in the Supreme Court, John Watson entered up a judgment in due form of law, upon the bond aforesaid, which accompanied his mortgage from Daniel Hendricks, and sued out execution thereon. This execution was levied on the premises in question, then still in possession of the said Daniel Hendricks, and the said premises, by virtue thereof, were soon after sold to John Goldtrap, the defendant, by the then sheriff of Somerset, and conveyed in

Den, ex dem. Low, v. Goldtrap.

due form of law, and the said John Goldtrap has continued in possession ever since.

"The said mortgage of February 1st, 1760, still remains uncancelled, and is now in the hands of the defendant, John Goldtrap, but is not assigned to him; nor is there any endorsement of money paid by him thereon; nor is there any pretence that he paid any other or greater sum than that bid for the said premises at sheriff's sale, and paid to the sheriff.

"Cornelius Low, in and by his last will, in due form of law executed, devised his real estate to his executors, to be sold [274] for the uses and purposes therein mentioned, which executors are the lessors of the plaintiff.

"And if upon this case, the court shall be of opinion that the plaintiff is entitled to recover, then judgment to be entered for the said plaintiff, and if not, the said plaintiff to be non-suit.

"The papers alluded to in the above case to be exhibited and made part thereof.

"ANDREW KIRKPATRICK, *Attorney for plaintiff*.
"ROBERT BOGGS, *Attorney for defendant.*"


KINSEY, C. J.

The case not having been argued before the court, and the points for which the parties respectively contend not having been suggested by the counsel, we are left to suppose that the question submitted to our consideration is, whether the first mortgage to Watson is void, as against Low, not having been recorded.

The act of 20th of June, 1765, (*Allinson's Laws* 270,) which is the first that gave a preference to a mortgage recorded, over one which is not recorded, appears from the preamble to have been designed to remedy two evils: 1st. To secure purchasers of lands mortgaged without notice. 2d. Subsequent mortgages without notice. It therefore enacts that mortgages made after that date should be recorded; and that if any person after the 1st of January, 1776, should mortgage to

two or more, the preference should be given as they were respectively recorded.

By the act of 14th of November, 1786, which recites that the foregoing act had not answered all the good purposes intended, as persons continue to receive mortgages, and neglect putting them on record, and that others purchasing the premises are by this means injured, it is provided that no mortgage thereafter made should affect a purchaser *bona fide*, unless put on record in thirty days after its execution, and that mortgages heretofore given shall have no effect in law or [275] equity, against any person, (except the mortgagor,) unless recorded under the act of 1765, or before the first of May, 1787.

The general question is, whether Watson's mortgage, dated in 1760, not having been registered under the act of 1765, or within the time prescribed by the act of November, 1786, is void as against Cornelius Low's mortgage of September, 1765, which was recorded.

We think it clear that the act of 1765 was not intended to have, nor do the terms employed require us to give it any retroactive operation, so as to affect mortgages which had been previously executed ; and we are also of opinion that the act of 1786 does not affect the priority of Watson's mortgage.

For, first, the act of 1786, making antecedent mortgages void in law and equity, if not recorded before the first of May, 1787, avoids them only as against purchasers, and leaves subsequent mortgages as before.

The act of 1765, in its preamble, mentions mortgagees and purchasers without notice ; but in its provisions it gives no security to purchasers, but merely determined the priority of mortgages. Then comes this act of 1786, which recites the evil of unregistered mortgages to purchasers only, and in the first section enacts that no mortgage thereafter made shall affect a *bona fide* purchaser, unless recorded within thirty days from the time of its execution: The second section enacts that mortgages heretofore made should not avail against any person, (except the mortgagor,) unless, &c. It appears to be

Den, ex dem. Low, v. Goldtrap.

supposed by the counsel for the plaintiff in this case that, as mortgages unregistered by the first of May, 1787, are thus made void as against " any person," that it will be so, as well against Low, the second mortgagee, as against a purchaser. But we are of opinion that the words "any person" here used, mean only such persons as were previously mentioned in the preamble or the preceding section of the act. The doctrine which we have mentioned is fully laid down in *Plowden* 204, in the case of *Stradling* v. *Morgan*, in 4 *Inst.* 330, *Leach* 243, that though statutes are worded generally, yet if the intent is particular, they are to be construed particularly. *Jones* 422, 423 ; 1 *Bl. Com.* 87. General words shall [276] never be carried further than the plain design of the legislature. This act, strictly speaking, is *ex post facto,* (*u*) and being highly penal, so far as it respects precedent mortgages, should not be extended beyond its manifest design.

2d. We are of opinion that Watson's mortgage of 1760, not coming within the act of 1765, which first required mortgages to be recorded, does not come within the act of 1786, which was made with a reference to the first act, and purports merely to extend its provisions, without enlarging its operation. Neither of these acts can, as we conceive, be made to have effect upon mortgages executed prior to the date of the first ; and although the latter speaks generally of mortgages heretofore given, yet it can only intend to include those which ought to have been recorded under the act of 1765, and not those which, being of prior date, stood upon ground altogether different.

3d. Again, we consider the bond, warrant, and mortgage to Watson as constituting collectively one act or deed. 5 *Burr.* 2787, per Lord Mansfield, in the case of *Vaughan, ex dem. Atkins,* v. *Atkins.* The judgment, execution, and sale to Goldtrap in 1772, were intended to make the estate abso-

(*a*) See *Dash* v. *Van Kleeck,* 7 *Johns.* 477 ; *Calder* v. *Bull,* 3 *Dall.* 386 ; Debates in Virginia Convention, 339, on the meaning of the term *ex post facto* in the constitution of the United States.

lute, which, by the mortgage, was defeasible. The possession of Goldtrap ever since, for near, if not quite twenty years, with the acquiescence of the lessors of the plaintiff, prevents the urging of any of those inconveniences which it was the design of the acts of 1765 and 1786 to avoid. If the cause had come on before a jury under these circumstances, I should have directed them that they ought to presume that Low, the second mortgagee, had notice of Watson's mortgage when he took his own.

On the whole case, then, I cannot allow myself to suppose the mortgage of 1760, followed by such notorious acts, ought to be considered as void against the mortgage of 1765, not followed by any except that of having it recorded ; nor do we conceive that an ejectment can be supported under such circumstances, by the second mortgagee against the first.

Judgment of non-suit.